POMEROY & ANDREWS, Respondents, v. SIGERSON, Appellant.

1. P. & A., partners, commission and forwarding merchants in St. Louis, advertised that they would make liberal cash advances upon produce placed in their hands for sale in New Orleans, New York, or Liverpool. J. S. delivered to P. & A. 386 barrels of lard with the request that it should be "sent forward from New Orleans to Liverpool, provided your (P. & A.'s) correspondents are in a situation to do that kind of business, and have correspondents that they are satisfied will protect their and our interest." P. & A. made advances upon said lard, and shipped the same to their correspondents in New Orleans, with instructions to ship the same to Liverpool, provided it could be drawn upon so as to cover the advances made to J. S. by P. & A., with charges, &c., otherwise to sell the same in New Orleans. The New Orleans house, not being able to secure advances so as to cover the advances of P. & A., sold the lard, and failed soon after, not having rendered any account of the proceeds. *Held*, in a suit by P. & A. against J. S. to recover the advances made by P. & A., that it should be left to the jury to determine whether it was not the understanding of the parties that J. S. should look to P. & A. for the money arising from the sale of the lard; in short, whether P. & A. were not the agents for the sale of the lard, and those whom they employed, their sub-agents, for whose conduct they are liable.

2. An arrangement between forwarding and commission merchants in St. Louis, and their correspondents in New Orleans, that on all sales of produce shipped by the St. Louis house to that in New Orleans, one per cent. of the usual commission of 2½ per cent. should be returned to the St. Louis house, does not constitute the two houses partners.

3. In suits commenced under the old system of practice, the rules of evidence, as they then existed, will govern in ascertaining the competency of a witness.

### *Appeal from St. Louis Circuit Court.*

This case was formerly before the Supreme Court, and is reported in 13 Mo. 360. Being then reversed and remanded to the Circuit Court, a new trial was there had, which resulted in a verdict and judgment for the plaintiffs. At the trial, it was

in evidence that the plaintiffs were commission and forwarding merchants in St. Louis, and had advertised that they would make liberal cash advances upon produce placed in their hands for sale in New Orleans, New York, or Liverpool. In the year 1848, the defendant, at different times, from the 1st to the 18th of April, delivered to plaintiffs, pork, bacon and lard, to be shipped by them and sold. Among other lots delivered were 410 barrels of lard, 386 barrels of which were destined for Liverpool, as is shown by the following letter : " St. Louis, April 10th, 1848. Messrs. Pomeroy & Andrews : Gents.—I herewith hand you dray tickets and invoice of 410 barrels of lard, 386 of which is a prime article and in fine order, and which I wish sent forward direct from New Orleans to Liverpool, provided your correspondents are in a situation to do that kind of business, and have correspondents that they are satisfied will protect their and our interest. The twenty-four barrels marked ' lard' is an article manufactured from heads and will be found quite a common article, which I wish them to sell in New Orleans or ship to Boston, as they may think best," &c. This direction, in the form of a letter, was signed by John Sigerson, defendant in this suit. The plaintiffs made advances upon the pork, lard, &c., amounting in all to somewhat more than $6000, of which sum $4000 were advanced by plaintiffs on the 410 barrels of lard.

There was also evidence tending to prove that there was due plaintiffs a balance of $474 12, on a partially executed contract for the purchase of a quantity of pork by plaintiffs for Andrews & Bro., of New Orleans, on which contract plaintiffs had paid to defendant $3500. The whole amount claimed by plaintiffs in the present action, including the above balance, was, after allowing credits, $6883 84.

It was in evidence that the property put by defendant, Sigerson, in plaintiffs' hands for shipment and sale, (except six casks of bacon, of which plaintiffs admitted the sale and gave defendant credit for the proceeds in their account,) was shipped by plaintiffs to the commercial house of Andrews & Bro., of

Pomeroy v. Sigerson.

New Orleans. The house of Andrews & Bro. failed soon after the shipments to it, and both members of the house committed suicide. There was much evidence introduced tending to show that at the time of the shipments the said house was in good credit and standing; there was also some testimony leading to an opposite conclusion. There was also evidence tending to show that the 410 barrels of lard were sold by Andrews & Bro· in New Orleans, previous to their failure. It did not appear, however, what was done with the other property shipped to Andrews & Brother.

On the day (April 12, 1848) defendant delivered the 410 barrels of lard to plaintiffs (accompanying the delivery with the letter of instructions above set forth), plaintiffs wrote to Andrews & Brother, enclosing the letter of instructions above set forth, and a bill of lading of the 410 barrels of lard. The letter is as follows: "St. Louis, April 12th, 1848. Messrs. Andrews & Brother: Enclosed find bill of lading for 410 barrels of lard, shipped per account of John Sigerson, with copy of instructions from him. It is his wish to have it shipped to Liverpool, providing it can be done so as to protect our interest and his; and if not, to be sold to best advantage in New Orleans. I expect it is a fine article, all except the twenty barrels. If we can negotiate, we shall have to advance about $4000 on this shipment. So if it can be shipped to Liverpool and drawn upon by you to make our advance good, with all charges, for receiving and forwarding, better send it through, as he is very anxious to have it sent to Liverpool; and we would like to know how we are to do business with persons wishing to ship direct to Europe through your house, as there may be considerable business of that kind to do. We could not say positively to J. Sigerson that it would be sent to Liverpool, as we were not fully instructed by you about such consignments. Please answer this immediately, that we may advise him what is done. Yours truly, Pomeroy & Andrews." Andrews & Brother wrote to plaintiffs in reply to this letter. Their letter is dated April 19th, 1848, and contained the following pas-

sage : " Make no positive arrangements for shipping from here where you advance. We have offered the lard to all those we would ship to their houses in Liverpool, and they won't any of them advance over three cents per pound." This would have amounted to less than the sum advanced by plaintiffs on said lard. This letter was shown to defendant, J. Sigerson.

It was in evidence that the plaintiffs raised all the money advanced by them to defendant, by drawing bills on Andrews & Brother, which were sold to L. A. Benoist & Co., bankers at St. Louis, and a bill for $4000 drawn against the shipment of lard, was introduced in evidence, with the proof that it belonged to plaintiffs, they having settled with Benoist & Co., and given their notes. There was no evidence given as to whether the bills drawn against the other shipments were paid or not by Andrews & Brother. There was evidence tending to prove that at the time of their failure the house of Andrews & Brother was insolvent.

It also appeared in evidence that there was an arrangement between plaintiffs and Andrews & Brother, that on all shipments by plaintiffs to them, one per cent. commissions on sales should be returned to plaintiffs ; the usual commissions on sales being $2\frac{1}{2}$ per cent. ; that is, Andrews & Brother charged one and one half per cent. in their accounts with plaintiffs, instead of the usual commission, to-wit, $2\frac{1}{2}$ per cent., remitting the one per cent. in favor of plaintiffs. This was plaintiffs' only compensation for shipping, advancing, &c., in St. Louis.

At the trial, plaintiffs called as a witness Louis A. Benoist, member of the firm of L. A. Benoist & Co., bankers ; defendant objected to his being sworn on the ground of his interest in the result of this suit. He was excluded. The plaintiffs then offered to read a deposition of said Louis A. Benoist, to the reading of which defendant also objected, on the ground of interest, and to support the objection, read to the court the deposition itself, in which it is stated by said Benoist that it was understood between plaintiffs and himself that if plaintiff recover judgment in this suit, against the defendant, the money is

to be paid to the house of L. A. Benoist & Co. Defendant also read to the court an assignment by Pomeroy & Andrews, plaintiffs, to L. A. Benoist and James S. Thomas, of the first judgment obtained in this cause. This assignment was dated March 11th, 1849 ; the deposition was taken October 20, 1848. The court overruled the objection, and permitted the deposition to be read. This suit was commenced under the old practice.

There was evidence tending to show that if the 386 barrels of lard had been sent to Liverpool, a large profit would have been made thereon.

The court, on the motion of plaintiffs, gave the following instructions : " 1. It is for the jury to ascertain from all the proof in the case, whether there was any violation of the defendant's instructions on the part of the plaintiffs in the transactions in question ; if they did violate these instructions, then the jury will deduct from the claim of plaintiffs such damages as the defendant has proved to their satisfaction he sustained by reason of plaintiffs' violation of his instructions. But if they find, on the contrary, that there was no violation on the part of the plaintiffs of defendant's instructions, and that they acted in good faith, and with usual care in the premises, and that no part of the proceeds have ever been received by the plaintiffs, after the exercise of due diligence, and also find that after a reasonable time and notice to defendant this suit was brought, then the plaintiffs are entitled to recover the charges in account made by them against John Sigerson, which they may have proved to the satisfaction of the jury. 2. If the jury find that the agreement respecting one per cent. between the houses of Andrews & Bro. and Pomeroy & Andrews, was merely a stipulated compensation and inducement for sending them business and for their services in this respect as commission merchants, then there is no liability on the part of Pomeroy & Andrews, as co-partners, with the New Orleans house."

The defendant asked and the court gave the following instruction : " 1. The plaintiffs can not recover the advances made by them, without showing the disposition made of the

goods advanced upon, and that they have not been repaid their advances out of the goods or their proceeds."

The court refused the following, asked by defendant : " 2. When a consignment is made to a commission merchant, with conditions and instructions accompanying the same, the acceptance of it by such commission merchant is an assent to such conditions or instructions ; and if the jury find defendant consigned to plaintiffs or their commission merchants 386 barrels prime lard and accompanied the same with a note in writing, to the effect that he wished the lard sent forward direct from New Orleans to Liverpool, provided the correspondents of plaintiffs were in a situation to do that sort of business, and had correspondents who they were satisfied would protect the interests of plaintiffs and defendant, and that the plaintiffs did, after learning the contents of said note, accept the said consignment ; that by such acceptance the plaintiffs did by force of law become bound by the conditions and instructions contained in said note, and did agree with defendant that their correspondents were in a situation to do that sort of business, and had such correspondents as were mentioned in said note, and that it was the duty of the plaintiffs, after receiving said consignment, to cause the same to be sent forward to Liverpool for sale without unreasonable delay. 3. If the plaintiffs have violated their agreements with defendant or disobeyed his instructions in regard to the several consignments, or any one of them shown by the evidence to have been made by defendant to them, and loss has ensued to the defendant therefrom, the plaintiffs are not entitled to recover their advancements sued for in this action, without deducting the loss so sustained. 4. If the jury find that plaintiffs accepted the consignment of 386 barrels of lard, with instructions and conditions such as are mentioned in defendant's note to plaintiffs, dated April 12, 1848, and plaintiffs on the same day forwarded the same to New Orleans to their correspondents, Andrews & Bro., and instructed them not to ship the same to Liverpool unless they could draw on it so as to make good the advances of plaintiffs, with all charges for receiving

and forwarding, and otherwise to sell the same in New Orleans, they will find that said plaintiffs violated the instructions of the defendant, in so instructing their then correspondents in New Orleans, and are responsible for all the damages that did ensue. 5. If the plaintiffs held themselves out to the public as prepared to make advances on produce put into their hands for sale in Liverpool and received a consignment afterwards from defendant for that purpose, with the understanding that they (plaintiffs) had correspondents in a situation to do that sort of business, and that such correspondents had other correspondents who they were satisfied would protect the interests of both plaintiffs and defendant in the contemplated shipment to Liverpool, and such was not the fact, the jury will find that plaintiffs have acted in bad faith, have violated their agreement with defendant, and are responsible for all the damages that did ensue. 11. The defendant moves the court to instruct the jury that if the plaintiffs received consignments of produce from the defendant, as his commission merchants, and agreed to forward the same, under the instructions of the defendant, for a market, and to cause the same to be sold by themselves or their correspondents, and the same was sent by plaintiffs to certain correspondents of theirs in New Orleans, the house of Andrews & Bro., and that the plaintiffs sent the same to said A. & Bro., in New Orleans, because they were to do so by arrangement previously made between the said plaintiffs & Andrews & Bro., wherein the said Andrews & Bro. were to divide the commissions arising from the same with plaintiffs, the jury will find that said Andrews & Bro. were the sub-agents of the plaintiffs, and that the plaintiffs are liable for any amount of the proceeds of said sales received by them, and for any other act of Andrews & Bro. which may have been injurious to defendant."

There were other instructions asked on the part of defendant and refused by the court, which it is unnecessary to set forth. The jury rendered a verdict for plaintiffs for $3849 21.

*Glover & Richardson* and *Barton Bates*, for appellant. 1. The delivery of the lard to Pomeroy & Andrews was made

upon the faith of their having the facilities named in the note of Sigerson to them, of April 12, 1848, for sending the lard to Liverpool. If they had no such facilities they should have refused to receive it. The legal effect of their accepting the lard, with the instructions contained in the above letter, was an admission that they possessed such facilities and would send it to Liverpool. This is what defendant's second instruction was intended to declare. Pomeroy & Andrews had advertised that they would make liberal cash advances on produce placed in their hands for sale in Liverpool. This advertisement placed them in the position of agents selling goods in Liverpool and making cash advances upon them for that market. Such being their position, the instructions accompanying the delivery are easily understood. Accepting the goods, they took them subject to the conditions contained in the letter. (4 Dall. 389 ; 3 Wash. C. C. 151 ; 1 Sandf. S. C. 360 ; 4 Johns. 402.) The court should have instructed the jury as to the legal effect of the instructions contained in the note of Sigerson to Pomeroy & Andrews, and should not have left it to the jury from " all the proof in the case" to be construed by them. 2. But granting that Pomeroy & Andrews were bound merely to use their best endeavors to send the lard forward to Liverpool, provided they could procure the requisite facilities, and did not by the act of accepting, under the circumstances, agree that they had the requisite facilities ; did they do their duty under this view of the matter? or conform to the wishes and directions of Mr. Sigerson? They send the 386 barrels of lard to New Orleans, with Sigerson's note, inquire how this business is to be conducted, (showing that when they advertised to sell produce in Liverpool, they had made no arrangements at all to do it,) and then, without waiting any reply to their inquiries, direct a sale of the lard in New Orleans unless their advances and all charges can be raised by bills on it when shipped to Liverpool. Their duty was to send the lard to Liverpool, if honest and faithful correspondents could be procured. They agreed to do so. They did nothing toward procuring such cor-

respondents.   3. Defendant's fifth instruction was erroneously refused.   4. The agreement between Pomeroy & Andrews and Andrews & Bro. constituted them partners as to goods consigned to the latter from under such agreement.   (1 Smith's Lea. Cas. p. 600, top.)   5. The eleventh instruction asked by defendant was improperly refused.   If Andrews & Bro. were not partners, they were merely the sub-agents of Pomeroy & Andrews, receiving a compensation of 1½ per cent. commission from them.

*Field & Kasson*, for respondent.   1. The second instruction asked by defendant entirely overlooked the *proviso* contained in Sigerson's note to Pomeroy & Andrews.   That letter did not *require* the lard to be sent forward to Liverpool.   A discretion was given to the consignees in New Orleans.   The letter shows no desire on Sigerson's part to have the lard go forward at all unless plaintiffs' correspondents in New Orleans did that kind of business ; nor unless they also had correspondents in Liverpool, who would " protect their and our interest."   By this letter, Sigerson recognized an existing interest in Pomeroy & Andrews, of St. Louis, and an interest to exist in A. & Bro., of New Orleans.   This interest was created by the advance made on the lard.   Before they, by mercantile usage, could be obliged to forward it to Liverpool, they were also entitled to be secured for their advances, and freight and charges.   The published advertisement of plaintiffs is wholly irrelevant here, in the face of the express arrangement.   Defendant's instruction, No. 2, gives a wrong construction to Sigerson's letter.   Sigerson knew as fully respecting the house of Andrews & Brother as plaintiffs, and knew it was doubtful if the lard could be sent forward, and knew it could not be unless the market were such as to admit of its being drawn against to cover advances and charges and freight.   This letter of April 12th shows this.   2. There was no copartnership existing between plaintiffs and Andrews & Brother.   (See 1 Smith's S. C. 836, top page ; 3 Wils. 40 ; 1 Camp. 329 ; 2 H. Bl. 590 ; 4 Esp. 182 ; 4 M. & Sel. 240 ; 6 Metc. 92 ; 3 C. B. 32.)

3. Defendant's instruction 11 was properly refused. There was no evidence whatever of any agreement between Pomeroy & Andrews and Andrews & Brother to the effect that the former were bound to send all their consignments to the latter. If Andrews & Brother were the sub-agents of Pomeroy & Andrews, they were sub-agents in the sense that all correspondents are, where a distant market is sought, and not in any such sense as that implied in the instruction above referred to. Andrews & Brother were as much agents of Sigerson as of Pomeroy & Andrews. 4. The deposition of Benoist, taken before his disqualification by taking the assignment of the judgment, was properly admitted. (1 Greenl. Ev. § 168.)

Scott, Judge, delivered the opinion of the court.

In our opinion, this cause has not been tried on the real point involved in it. That point is, whether Pomeroy & Andrews received the produce of Sigerson as mere forwarding agents, or whether, under their advertisements in the newspapers, it was placed in their hands for sale. Or, in other words, was it the understanding between the parties that Sigerson should look to Pomeroy & Andrews for the money arising from the sale of his produce; or was he bound to look to the agent Pomeroy & Andrews might employ, without knowing who he was? Suppose the produce had been forwarded to Liverpool and the proceeds of the sale made way with by an insolvent agent there: to whom would Sigerson have looked for his produce—to Andrews & Brother, or to Pomeroy & Andrews? It can make no difference that the directions of Sigerson could not be complied with. If the produce was placed in the hands of Pomeroy & Andrews, to be sold in a particular way, their inability to comply with the directions would not vary the undertakings they assumed at the outset. If Pomeroy & Andrews were liable to Sigerson for the proceeds of the sale when they received the produce, they remained liable, notwithstanding their inability to sell it, as they were directed. The fact that Sigerson did

not object to the arrangement made by Pomeroy & Andrews with Andrews & Brother, respecting the sale of the lard, does not prove that Sigerson released them from liability as his agents for the sale of it.

There were facts and circumstances in the case which should have been submitted to the jury, with a direction to determine whether Pomeroy & Andrews were not the agents for the sale of the lard, and that those whom they employed were their sub-agents, for whose conduct they were liable. This is a question for the jury, and we express no opinion in relation to it.

As the first instruction given for the plaintiffs was expressed in such a way as to exclude this view of the case from the consideration of the jury, the judgment must be reversed.

The facts, as proved, did not, according to the recent decisions, constitute a partnership between the parties.

As this case was commenced under the old system of practice, the rules of evidence, as they then existed, will prevail in ascertaining the competency of witnesses. To disqualify a witness, he must be legally entitled to payment out of the fund. A mere expectation of payment, however strong, if not amounting to a legal right, has been held insufficient to render a witness incompetent. (1 Greenl. 460.) This is said in reference to the deposition of Benoist.

Judge Ryland concurring, the judgment is reversed, and the cause remanded.